1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     LEYLA LEANN SHELTON,                          No.  2:21-cv-02379 CKD

12              Plaintiff,

13        v.                                          ORDER

14     KILOLO KIJAKAZI, Acting
       Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19  ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title

20  XVI of the Social Security Act ("Act").  The parties have consented to Magistrate Judge

21  jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the

22  reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant

23  the Commissioner's cross-motion for summary judgment.

24  BACKGROUND

25        Plaintiff, born in 1976, applied on March 28, 2017 for SSI, alleging disability beginning

26  January 1, 2014.  Administrative Transcript ("AT") 11, 29.  Plaintiff alleged she was unable to

27  work due to anatomical issues of the back, spinal stenosis, Sjogren syndrome, depression,

28  anxiety, and fibromyalgia.  AT 106-107.  In a decision dated April 27, 2021, the ALJ determined

                                               1

that plaintiff was not disabled.[1]  AT 11-31.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since March 28, 2017, the application date.
>
> 2. The claimant has the following severe impairments:  degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; degenerative disc disease of the thoracic spine; mild degenerative joint disease of the hips; mild degenerative joint disease of the left shoulder; fibromyalgia; headaches; peripheral neuropathy; Sjogren's syndrome; atrial fibrillation; Wolf Parkinson White syndrome; ulcerative colitis; obesity; chronic pain disorder; bipolar disorder; anxiety; depression; and personality disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2        4.  After careful consideration of the entire record, the undersigned
     finds that the claimant has the residual functional capacity to
3    lift/carry 20 pounds occasionally and 10 pounds frequently; sit for
     six hours in an eight-hour workday; stand and/or walk for six hours
4    in an eight-hour workday; occasional climbing of ramps or stairs but
     no climbing of ladders, ropes, or scaffolds; frequent balancing;
5    occasional stooping, kneeling, and crouching; no crawling; frequent
     forward, lateral and overhead reaching; frequent handling and
6    fingering;[2] . . . permitted one bathroom break not to exceed five
     minutes both before and after the meal break; able to understand,
7    remember, and carry out simple tasks while maintaining attention
     and concentration for two hours at a time before requiring a regular
8    scheduled break; no fast-paced production; low stress work defined
     as only occasional decision-making and only occasional changes in
9    the work setting; occasional interaction with coworkers and
     supervisors; no interaction except incidental with the public; and jobs
10   that do not require excellent articulation or fast speech.

11       5.  The claimant is unable to perform any past relevant work.

12       6.  The claimant was born on XX/XX/1976 and was 40 years old,
     which is defined as a younger individual age 18-49, on the date the
13   application was filed.

14       7.  The claimant has at least a high-school education.

15       8.  Transferability of job skills is not material to the determination of
     disability because using the Medical-Vocational Rules as a
16   framework supports a finding that the claimant is 'not disabled,'
     whether or not the claimant has transferable job skills.

17
         9.  Considering the claimant's age, education, work experience, and
18   residual functional capacity, there are jobs that exist in significant
     numbers in the national economy that the claimant can perform.[3]

19
         10.  The claimant has not been under a disability, as defined in the
20   Social Security Act, since March 28, 2017, the date the application
     was filed.

21

22   AT 13-30.

23   ISSUES PRESENTED

24       Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

25   _____
     [2] The ALJ also included limitations on plaintiff's work environment as to noise, light, and
26   pulmonary irritants.  AT 20.

27   [3] Relying on vocational expert (VE) testimony, the ALJ found that plaintiff could perform the
     requirements of representative jobs such as checker, router, and routing clerk, all classified as
28   light unskilled work.  AT 30.

1  disabled:  (1) the ALJ improperly discounted the opinions of plaintiff's therapist, Tanya Roberts;

2  and (2) the ALJ's assessed residual functional capacity (RFC) for light unskilled work is not

3  supported by substantial evidence.

4  LEGAL STANDARDS

5        The court reviews the Commissioner's decision to determine whether (1) it is based on

6  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

7  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

8  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

9  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

10  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

11  Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

12  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

13  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

14  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

15  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

16        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

17  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

18  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

19  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

20  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

21  administrative findings, or if there is conflicting evidence supporting a finding of either disability

22  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

23  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

24  weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

25  ANALYSIS

26      A.  Therapist Opinions

27      Plaintiff's claim as to health care provider Tanya Roberts, a licensed social worker and

28  therapist, concerns the assessed mental RFC for light unskilled work.  Plaintiff asserts that the

4

ALJ improperly discounted the opinions of Ms. Roberts, which, if credited, would have required a finding of mental disability.

     1.  Therapist's Assessments

     The record contains several of Ms. Roberts' statements regarding plaintiff's condition over a four-year period.  In a May 2017 letter to "whom it may concern," Ms. Roberts noted that she had been seeing plaintiff for therapy at least every other week since August 2016.  AT 929.  In the letter, written close to the alleged onset date of March 28, 2017, Ms. Roberts noted plaintiff's diagnoses of Major Depressive Disorder, Severe, and Generalized Anxiety Disorder.  AT 929.  She wrote that plaintiff

> most of the day, every day, feels depressed hopeless, and has episodic uncontrollable crying episodes, . . . and frequently has suicidal ideation . . . [She] has made multiple attempts to cut on herself and talks of killing herself.  The family and I work together to decrease self-harming behavior/risk.  Ms. Shelton will often lock herself in the bathroom for hours crying until her family is able to talk her down.  [She] spends an increased amount of time in bed.  When [she] leaves the home, it is primarily for therapy and doctor appointments.
>
> [She] also experiences anxiety, panic attacks, becomes agitated or angry and can be difficult to take into the community. . . .
>
> Ms. Shelton is dependent on her family for care.  I suggested Ms. Shelton apply for disability . . . as she is unable to return to the work force in any capacity.

AT 929.  Also in May 2017, Ms. Roberts wrote a letter stating that plaintiff could not attend jury duty "due to frequent panic attacks, episodic crying episodes, and multiple health problems that affect her memory, concentration, and ability to discern data.  Ms. Shelton generally does not leave her home unless it is to attend medical and mental health appointments."  AT 926.

     In January 2020, Ms. Roberts wrote another letter, stating that she had treated plaintiff since August 2016, noting a "decline in [plaintiff's] physical health," and opining that plaintiff "is clearly unable to meet the demands of returning to work."  AT 928.

     On September 21, 2020, Ms. Roberts filled out a Mental Disorder Questionnaire Form, noting that she continued to see plaintiff weekly to monthly.  AT 2252, 2256.  Ms. Roberts noted

1    that plaintiff had numerous mental health issues, including depression, suicidal ideation, panic

2    attacks, and obsessive-compulsive thoughts.  AT 2254.  Ms. Roberts wrote that plaintiff was

3    "easily overwhelmed," had poor short-term memory, and that her communication was

4    "tangential" and, at times, consisted of "nonsensical statements."  AT 2253, 2255.  Ms. Roberts

5    opined that plaintiff was "unable to adapt to work" and that her prognosis was "poor" and

6    "unlikely to improve."  AT 2255, 2256.

7          In February 2021, Ms. Roberts filled out a Mental RFC Questionnaire in which she opined

8    that plaintiff's physical and mental health "prevent her from being able to concentrate, follow

9    directions, or sustain any physical efforts for more than a few minutes at a time."  AT 3741.  Ms.

10   Roberts noted that plaintiff had short term memory issues, episodes of emotional dysregulation,

11   difficulty in public or social settings, and "inadequate" intellectual functioning.  AT 3740-3472.

12   She opined that plaintiff would be absent from work five days or more per week.  AT 3742.

13          2.   ALJ's Evaluation

14          The ALJ discussed Ms. Roberts' statements at various points in his decision.  First, he

15   summarized her letters of May 17, 2017 and January 17, 2020, noting that "Ms. Roberts did not

16   provide any treating records or mental status examinations of the claimant."  AT 26.

17          Later in the decision, the ALJ wrote:

18
> The undersigned has considered the multiple opinions from Tanya
19
> Roberts, LCSW, wherein she opined performance of work-related
> (mental) tasks were precluded for performance of 15% or more in an
20
> eight-hour workday and the claimant would miss multiple days of
> work per month.  The opinions are not persuasive because they are
21
> inconsistent with and unsupported by the medical evidence of record
> including the consultative psychological evaluation performed by
22
> Dr. Wakefield and mental status exams from Dr. Wakefield and Dr.
> Nichols.   Appearance, speech, behavior, memory, attention and
23
> concentration were all within normal limits.  She has no history of
> inpatient mental heath treatment or any voluntary or involuntary
24
> psychiatric hospitalizations, which would be expected given the
> extreme degree of limitations found by Ms. Roberts.  Moreover, Ms.
25
> Roberts did not provide any treating notes or mental status exams
> that would support her extreme opinions.

26   AT 28; see AT 26 (summarizing March 2015 consultative evaluation by Dr. James Wakefield and

27   2020 treatment notes from psychiatrist Dr. Monica Nichols, including normal and borderline

28   mental status findings); AT 448-451 (Wakefield evaluation); AT 3873-3888 (Nichols treatment

1   notes).

2         Still discussing the mental opinion evidence, the ALJ wrote:

3               The undersigned also notes that the record includes two letters from
                Tanya Roberts, LCSW that are not persuasive, as they are not
4               supported by or consistent with the medical evidence of record.  The
                observations and limitations noted within these letters are
5               inconsistent with the objective psychiatric evidence including
                treating note and generally normal mental status examination
6               findings.   Moreover, Ms. Roberts is not an acceptable medical
                source.

7

8   AT 28.

9         In formulating the mental RFC, the ALJ credited the 2015 opinion of consultative

10  examiner Dr. Wakefield, who opined that plaintiff could perform simple repetitive tasks, interact

11  with co-workers, supervisors, and the public at a minimally acceptable level, show appropriate

12  social behavior, and apply adequate concentration, persistence.  AT 28, citing AT 451.  The ALJ

13  also credited the opinions of two State agency psychological consultants, who reviewed plaintiff's

14  medical history in 2017 and opined that she could perform and sustain simple tasks, have limited

15  contact with others, and could adapt to the demands of a simple work setting.  AT 27, citing AT

16  116-118 (Dr. Patrice Solomon July 2017 mental RFC assessment), AT 133-135 (Dr. N. Haroun,

17  December 2017 mental RFC assessment).

18        3.   Legal Standard

19        "The ALJ is responsible for translating and incorporating clinical findings into a succinct

20  RFC."  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so,

21  the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one

22  medical opinion over another.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also

23  Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally

24  ignore a treating doctor and his or her notes, without even mentioning them").

25        The Ninth Circuit previously has required that, in order to reject an uncontradicted

26  opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons

27  that are supported by substantial evidence."  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir.

28

1  2017); Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014).  Alternatively, "[i]f a treating

2  or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

3  reject it by providing specific and legitimate reasons that are supported by substantial evidence."

4  Trevizo, 871 F.3d at 675.

5        However, for disability applications filed on or after March 27, 2017, the Commissioner

6  revised the rules for the evaluation of medical evidence at the administrative level.  See Revisions

7  to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).

8  Because Plaintiff filed her SSI application on March 28, 2017, it is subject to the new rules for the

9  evaluation of medical evidence.

10       The revised rules provide that adjudicators for the Social Security Administration,

11  including ALJs, evaluate medical opinions according to the following factors: supportability;

12  consistency; relationship with the claimant; specialization; and other factors such as the medical

13  source's familiarity with other evidence in the record or with disability program requirements.  20

14  C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and

15  consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or

16  finding is supported by relevant objective medical evidence and the medical source's supporting

17  explanations.  20 C.F.R. § 416.920c(c)(1).  Consistency is the extent to which an opinion or

18  finding is consistent with evidence from other medical sources and non-medical sources,

19  including the claimants themselves.  20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).  The ALJ will

20  articulate how she considered the most important factors of supportability and consistency, but an

21  explanation for the remaining factors is not required except when deciding among differing yet

22  equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  When a

23  single medical source provides multiple opinions and findings, the ALJ must articulate how they

24  were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

25       4.   Analysis

26       Plaintiff argues that the ALJ improperly rejected Ms. Roberts' opinions because she was

27  "not an acceptable medical source."  See AT 28.  Under the pre-March 2017 regulations for

28  assessing medical opinions, therapists and social workers do not qualify as acceptable medical

1    sources, and thus are considered "other sources."  See 20 C.F.R. § 416.913(d)(1); Stephens v.

2    Colvin, No. 13-cv-05156-RS, 2014 WL 6982680, at *4 (N.D. Cal. Dec. 9, 2014) (holding that

3    testimony from a treating therapist constituted an "other source").  Under the new regulations,

4    "[t]he agency must articulate . . . how persuasive it finds all of the medical opinions from each

5    doctor or other source, 20 C.F.R. § 404.1520c(b), and explain how [it] considered the

6    supportability and consistency factors in reaching these findings, id. § 404.1520c(b)(2)."  Woods

7    v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022) (internal quotation marks omitted).  But see §

8    404.1420c(d) ("We are not required to articulate how we considered evidence from nonmedical

9    sources using the requirements in paragraphs (a)-(c) in this section.").

10        Assuming arguendo that the ALJ was required to discuss the supportability and

11   consistency factors with respect to Ms. Roberts' opinions, he did so here.  The ALJ noted that Ms.

12   Roberts' opinions were not supported by any accompanying treating records or mental status

13   evaluations, and that the extreme limitations she opined were contradicted by numerous mental

14   status examinations in the record.  Specifically, the ALJ cited the mental status examinations

15   performed by Dr. Wakefield in 2015 and Dr. Nichols in 2020.  Insofar as Ms. Roberts opined that

16   plaintiff was unable to work, the ALJ was not required to discuss her opinion on this legal issue.

17   Plaintiff also argues that, because "Dr. Wakefield's opinion was more than six years old at the

18   time the ALJ rendered his decision," the ALJ had a duty to develop the record as to plaintiff's

19   mental functional abilities by arranging for a new consultative exam or a testifying medical

20   expert.  However, in addition to Dr. Wakefield's opinion, the ALJ considered the 2017 opinions

21   of the State agency consultants, both of whom reviewed plaintiff's mental health history after the

22   alleged onset date, and the 2020 treating notes of psychiatrist Dr. Nichols.

23        The ALJ's duty to further develop the record is triggered where the evidence is ambiguous

24   or inadequate to allow for proper evaluation.  Mayes v. Massanari, 276 F.3d 453, 459–60 (9th

25   Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of

26   ambiguity or inadequacy in the record is not required to trigger the necessity to further develop

27   the record where the record itself establishes the ambiguity or inadequacy.  McLeod v. Astrue,

28   640 F.3d 881, 885 (9th Cir. 2011).  In this case, Ms. Roberts' statements concerning plaintiff's

1    functional abilities do not suffice to establish that the record is ambiguous or inadequate,

2    triggering a duty to obtain another psychological evaluation.  Plaintiff has not shown harmful

3    error as to the duty to develop or the ALJ's assessment of Ms. Roberts' opinions.

4         B.  Residual Functional Capacity

5         Plaintiff argues that the RFC is unsupported by substantial evidence.  Specifically,

6    plaintiff asserts that, because the ALJ found her to have more physical limitations than those

7    opined by the State agency medical consultants, fewer limitations than those opined by Ms.

8    Roberts, and fewer limitations than plaintiff herself alleged, he impermissibly "relied upon [his]

9    own lay interpretation of the evidence." ECF No. 16 at 17-18.  Defendant counters that the ALJ

10   was merely fulfilling his "basic function [of] resolving conflicting evidence."  ECF No. 17 at 7.

11        Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for

12   assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person

13   "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003);

14   see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity

15   reflects current "physical and mental capabilities").  RFC is assessed based on the relevant

16   evidence in the case record, including the medical history, medical source statements, and

17   subjective descriptions and observations made by the claimant, family, neighbors, friends, or

18   other persons.  20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).  When assessing RFC, the ALJ must

19   consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

20   work[.]" 20 C.F.R. §§ 404.1545(a)(4).

21        In June 2017, State agency medical consultant Dr. Y. Ruo reviewed plaintiff's medical

22   record and concluded that she could perform a range of light work. AT 115-116.  Six months

23   later, a second Agency consultant, Dr. S. Garcia, reviewed plaintiff's record and concluded the

24   same. AT 131-133.  The ALJ found these opinions

> 25   persuasive with respect to light exertion and speech limitations
> 26   because they are supported by and consistent with the medical
> evidence of record including predominantly mild imaging; generally
> normal cardiac tendon reflexes, and sensation.  Exams indicate
> 27   normal motor strength, muscle tone, deep tendon reflexes, and
> sensation.  Straight leg raise testing is negative.  Gait, at worst, is
> 28   with a slight limp but otherwise steady with normal station, pace, and

stride. [4]  However, additional and more limited findings were found
by the undersigned with respect to postural, reaching, manipulating,
environmental, and other area.  It is noted that the consultants did not
have the opportunity to review all of the medical evidence submitted
at the hearing level.

AT 27 (emphasis added).

Plaintiff does not take issue with the ALJ's finding her more physically limited than the

State medical consultants did, based on evidence post-dating their review.  She argues, however,

that the ALJ was obliged to develop the record rather than reach this conclusion on his own.  Not

so.  See, e..g., Corwin v. Kijakazi, No. 1:20-cv-00394 GSA, 2021 WL 5771658, *6 (E.D. Cal.

Dec. 6, 2021) ("If the mere passage of time and presence of additional medical evidence in the

record established ambiguity, a consultative examination would be required in every case.  Yet

the regulations provide that the agency may obtain a consultative examination to resolve

evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case."); see also

Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not

the claimant's physician, to determine residual functional capacity").  As above, plaintiff has not

shown that the ALJ was required to further develop the record rather than resolving the

conflicting evidence in the record into an RFC.

Insofar as plaintiff argues that the RFC does not incorporate plaintiff's subjective

symptom testimony, the ALJ found plaintiff less than fully credible in an unchallenged finding.

AT 21 ("As for the claimant's statements about the intensity, persistence, and limiting effects of

... her symptoms, they are inconsistent because they are not supported by or consistent with

diagnostic imaging and testing, improvement with treatment as documented by treating

practitioners, findings on exams both physical and mental.").  Thus plaintiff fails to show error on

this basis.  Similarly, plaintiff's argument that the mental RFC should have incorporated Ms.

Roberts' opined limitations fails for the reasons set forth above.

Plaintiff's remaining arguments against the RFC essentially reweigh the evidence in a

manner more favorable to plaintiff.  The fact remains that the ALJ carefully reviewed the

---

[4] See AT 22 (finding that plaintiff's "disabling pain complaints are not supported by her physical
examinations, which generally show intact findings").

1    evidence of mental and physical impairment, resulting in an unusually detailed RFC, and plaintiff

2    has not shown, based on the evidence, that she has greater limitations than set forth in the

3    assessed RFC.  AT 21-29.  The court finds that the ALJ met his burden to consider the claimant's

4    "ability to meet the physical, mental, sensory, and other requirements of work," 20 C.F.R. §§

5    404.1545(a)(4), and that plaintiff's assessed RFC was adequately explained and grounded in

6    substantial evidence.

7         CONCLUSION

8         For the reasons stated herein, IT IS HEREBY ORDERED that:

9         1.  Plaintiff's motion for summary judgment (ECF No. 16) is denied;

10        2.  The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted;

11   and

12        3.  Judgment is entered for the Commissioner.

13   Dated:  March 29, 2023

14                                              CAROLYN K. DELANEY
                                                UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20   2/shelton2379.ssi.ckd

21

22

23

24

25

26

27

28